## John Comings *versus* John Stuart.

In giving a construction to the *betterment* acts, the fifth section of the St. 1821, c. 62, should be considered in connexion with the first section of the St. 1821, c. 47. The actual possession named in the statute first mentioned for the term of six years or more before entry, is such a possession as the tenant holds by virtue of a possession and improvement under the latter.

Where one was appointed the general agent of the owners of a half township of land, to take care of their interests thereon, it was his duty to protect and preserve their estate and its title, and to watch over and secure all their rights, and to keep them informed of his acts and proceedings ; and while such agency continues, he cannot be permitted to deny his agency as to one particular lot, and he cannot acquire a right to betterments thereon by a possession thereof for six years or more.

And if such agent enters into the possession of a lot, and continues it for more than six years, and makes improvements, but does not inform the owners of the land thereof, and they, without any knowledge of such possession or improvements, convey the lot to another person, who had knowledge of the improvements, the agent cannot enforce his claim for betterments against such purchaser.

This was an action of assumpsit for $500, for money laid out and expended. The general issue was pleaded and joined. The action was brought under the statute 1821, c. 62, § 5, for improvements made upon land in possession of the plaintiff upon which the defendant had entered as proprietor. It appeared that the plaintiff had been in possession of the land, prior to the defendant's entry, long enough to be entitled to betterments, if his possession had commenced and been continued under circumstances, which would legally give him that right.

It appeared that the land in controversy was a part of a half township of land which had been granted to the trustees of Belfast Academy, that in 1825 the plaintiff had agreed with the trustees to survey said half township, to put on certain settlers and to make a road, for all which he was to have conveyed to him 500 acres in the township and also to have 500 acres more, paying therefor thirty-five cents an acre ; that the plaintiff performed on his part, and that he located himself upon one of the lots, extending his improvements upon the lots in question, which adjoined that upon which he had erect-

ed his buildings ; and, that the plaintiff was the general agent of the trustees of the Belfast Academy to take care of their interests upon the half township.

On the 16th day of February, 1835, the trustees of Belfast Academy, by their deed of general warranty, conveyed to the defendant eighty acres of land, including the land in controversy. The defendant was fully apprised from the beginning of the improvements made by the plaintiff; but the jury found that the trustees at the time they made their deed to the defendant, had not been acquainted with the fact, that the plaintiff had made improvements upon any part of that land. The jury further found that the value of the plaintiff's betterments, if he was entitled to recover, was $250,00.

The plaintiff did not claim an interest in the land in controversy as any part of either 500 acres, to which he was entitled by the contract; but claimed the same as a disseisor of the trustees. Weston C. J. then holding the Court, ruled that, as he was the agent of the trustees, the plaintiff could not claim rights in this land against them or against their grantee, the defendant. The jury returned a verdict for the defendant, upon which judgment was to be rendered, if the Court should be of opinion that the action cannot be maintained. But if the Court should be of a different opinion, the verdict was to be set aside, a default entered, and judgment rendered thereon for the $250,00.

*Fuller* argued for the plaintiff, citing 9 Greenl. 62; 3 Fairf. 373 ; 16 Maine R. 60; 6 Pick. 178 ; 3 Fairf. 478.

*F. Allen* and *Hobbs*, argued for the defendant, and cited 13 Ves. 103; Paley on Agency, 33 ; Story's Agency, 196, 207 ; 6 Cranch, 148; 1 Mason, 341 ; 14 Ves. 199; 12 Mass. R. 329; 13 Mass. R. 241 ; 1 Greenl. 348.

The opinion of the Court was drawn up by

SHEPLEY J. — The fifth section of the statute, c. 62, must be considered in connexion with the first section of the statute c. 47. The actual possession named in the former for the term of six years or more before entry, is such a possession, as

the tenant holds by virtue of a possession and improvement under the latter. And that is in substance a re-enactment of the statute of Massachusetts passed in the year 1807, c. 75, which received a construction in the case of *Knox* v. *Hook,* 12 Mass. R. 329. In that case it is said, that the intention of the statute manifestly was, " to provide for those settlers upon land, who had entered against the will, or without the knowledge of the proprietors." And that construction was approved in the case of the *Proprietors of the Kennebec Purchase* v. *Kavanagh,* 1 Greenl. 348. The present case states, " that the plaintiff was the general agent of the trustees of the Belfast Academy to take care of their interests upon the half township." As such it was his duty to protect and preserve their estate and its title, and to watch over and secure all their rights, and to keep them informed of his acts and proceedings. And whatever he did on their lands thus committed to his care, the law considers as done for their benefit. Nor did he enter upon the lands against their will or without their consent. He was authorized to enter upon them and did so with their knowledge and approbation. His entries and acts may be considered as made and performed by his principals acting through him as their agent. And he cannot be permitted to deny that agency as to one particular lot or part of a lot, and to assert that he was acting contrary to his duty, against their will, and to the injury of their title. It is said that the trustees did not intend to convey his improvements to the defendant, who obtained a conveyance from them surreptitiously without their knowledge of the existence of such improvements. If so, it exhibits an instance of neglect of duty on the part of the plaintiff, who should have informed them of his proceedings on their lands ; and then, if they had conveyed the fruits of his industry to another, he might have had just cause of complaint; and might perhaps have obtained from them a just compensation for them. If they are now lost both to him and the trustees, that loss may be imputed to his neglect to communicate the proper information to his principals.

*Judgment on the verdict.*